UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 18 CR 726 |
| v. ) | |
| ) | Hon. John R. Blakey |
| ANTHONY HENRY ) | |

## UNITED STATES POSITION PAPER AS TO SENTENCING FACTORS

Between 2013 and 2015, defendant used the identities of at least 107 individuals to file fraudulent claims for unemployment insurance, which paid out nearly a half million dollars in benefits that were intended for those in need. Defendant also used the stolen identities to obtain fraudulent tax refunds, and finance luxury vehicles. A sentence within the guidelines range of 51 to 63 months of imprisonment is appropriate, defendant's years-long fraud that enriched him at the expense of identity theft victims, taxpayers, and those who were unemployed through no fault of their own.

### I. DEFENDANT'S BACKGROUND AND OFFENSE CONDUCT

The background is taken from the Presentence Investigation Report (PSR).

#### A. Defendant's Personal Background and Criminal History

Defendant, age 32, was born in Chicago and has lived in the area his whole life. PSR ¶¶ 79, 88. Defendant and his sister, Yoshimi Henry, were raised by their mother and grandparents. PSR ¶¶ 80-81. In 1992, when defendant was two years old, his father was sentenced to ten years of imprisonment for a narcotics offense. PSR ¶ 80. Defendant's father was released from the Bureau of Prisons when defendant was

twelve years old, and they did not have a relationship until he was an adult. *Id*. Defendant had a stepfather who had an unstable relationship with defendant's mother when defendant was a child. PSR ¶¶ 82-83.

Defendant reports that at age 2, he was given the wrong medication and went into cardiac arrest, which caused him to have a learning delay. PSR ¶¶ 91, 101. Defendant graduated high school in 2009. PSR ¶ 100. After high school, he did not have any legitimate employment before the instant offense. PSR ¶ 103. Defendant reports that he received money paid out to a trust for his cardiac event from age 2, which he used to support himself financially until he depleted those funds. *Id*.

Starting at age 17, defendant was arrested for a series of driving offenses. PSR ¶¶ 53-56, 65-66, 68. At age 20, defendant was arrested twice for retail theft and once for identity theft. PSR ¶¶ 67, 69-70. According to the identity theft police report, in June 2011, defendant was arrested in Champaign, Illinois with Brandon Pitts. PSR ¶ 70. Defendant had a bag with multiple cell phones and papers with names, account numbers, and phone numbers written on them. *Id*. No conviction resulted.

In 2015 and 2016, defendant was arrested for possessing fraudulent identification and identity theft on three occasions, each resulting in convictions. PSR ¶¶ 57-59. According to the police report, defendant was arrested in August 2015 and had two different false identifications with him at the time the police stopped him. PSR ¶ 57. Defendant, who was 24 years old at the time, told the officers that he had

the identifications to purchase beer. *Id.* Defendant was sentenced to two years of imprisonment for this charge.[1] *Id.*

At the time, defendant also had an outstanding April 2014 warrant for identity theft out of Will County. Defendant was charged with using a stolen identity to obtain a motor vehicle, which overlaps with the relevant conduct discussed below. PSR ¶ 58. As a result, defendant receives no criminal history points for this offense. *Id.*

In March 2016, while defendant was out on bond for these charges, he was arrested again in Rosemont at a Kay Jeweler's. PSR ¶ 59. According to the police report, the defendant opened a line of credit using an Indiana identification card with an identity theft victim's information and defendant's picture, then made purchases totaling over $6,000. *Id.* Defendant was sentenced to two years of imprisonment, concurrent with the case arising from his arrest the previous year. *Id.* Defendant was paroled from the Illinois Department of Corrections in February 2017. *Id.*

Defendant was arrested in this case in November 2018 and has been under pretrial supervision since then. During that time, he has testified positive three times for cannabinoids and once for opiates. PSR ¶ 99. He also failed to appear for testing on six occasions. *Id.*

Defendant has been in a relationship with his significant other since 2015. PSR ¶ 85. They have one child together, age 4, who lives with his mother.[2] PSR ¶ 86.

---

[1] The PSR states that defendant pled guilty on July 28, 2017, but that is a typo. PSR ¶ 57. The conviction was on July 28, 2016, as noted in defendant's plea agreement.

[2] Defendant reported that he resides with his girlfriend and their child. PSR ¶ 88. Defendant's mother reported that defendant is "intermittently involved in a relationship" with the girlfriend, that defendant resides with his sister, and that defendant "cares for his son during

3

Defendant studied at DeVry University between 2019 and 2022, but left school in order to work. PSR ¶ 100. Starting in March 2022, defendant began working for his uncle's staffing company. PSR ¶ 102.

As of today's date, defendant has not fully provided the financial information requested by the Probation Office, and did not sign his declaration affirming the accuracy of his Net Worth and Monthly Cash Flow statement. PSR ¶ 105-10.

### B. Offense Conduct

Defendant engaged in multiple fraud schemes between 2013 and 2015. First, like other defendants in this case and *United States v. Pitts, et. al.*, Case No. 18 CR 743, defendant purchased identities that Ashley Weathersby stole from Health Care Provider A, and used them to submit fraudulent claims for unemployment insurance. PSR ¶¶ 8-9. After the Illinois Department of Employment Security mailed out debit cards to addresses that defendant had access to, defendant used the cards to withdraw benefits at ATM machines. PSR ¶ 9. The total amount paid by IDES on the fraudulent claims that defendant certified was $491,154. PSR ¶ 10.

In 2013 and 2014, defendant also used stolen identities to purchase vehicles over the internet and defraud vehicle financing companies. PSR ¶ 12. Corey Logsdon and Brandon Pitts, who were charged in the *Pitts* case, were defendant's co-schemers. *Id.* The six vehicles had a total cost of $322,138. *Id.* After the vehicles were recovered, the loss to the bank was $77,573. *Id.*

---

the week and sometimes on weekends." PSR ¶ 86 Defendant later clarified that he "resides with [his girlfriend] or, on occasion, his sister." PSR ¶ 88.

4

Beginning in early 2015, defendant and Pace used their stolen identities to file fraudulent income tax returns. PSR ¶ 11. Defendant personally used the names of at least 23 identity theft victims. *Id.* The IRS paid out approximately $32,379 on those claims. *Id.* After the IRS paid out those refunds to bank accounts that defendant controlled, defendant used debit cards to withdraw the money. *Id.*

When defendant was arrested in this case in November 2018, he had a Glock 9mm handgun in the glove compartment of his vehicle, despite having been convicted of three felonies in 2016 and 2017, as noted above. PSR ¶ 14.

## II. A SENTENCE WITHIN THE GUIDELINES RANGE IS APPROPRIATE

A sentence within the guidelines range of 51 to 63 months is appropriate given defendant's pattern of fraud, the harm he inflicted identity theft victims and the government treasury, and the need to deter others from this conduct.

### A. Seriousness of the Offense and Impact on Victims

Defendant engaged in multiple schemes using identities that were stolen from patients who entrusted their doctor with their information. Defendant's use of these identities had an impact well beyond the the fraud on IDES, IRS, and the vehicle businesses. When defendant was submitting bogus unemployment claims, tax returns, and loan applications with stolen identities, it was foreseeable that this would compromise the lives of these victims and their doctor's office.

As Health Care Provider A explained in its Victim Impact Statement, "[t]his has been a nightmare for these innocent patients" who suffered "constant fear and

5

stress" about the identity theft ruining their financial security. GVO Ex. 1 at 1.[3] Some patients "became angry at their physicians, blaming them, raising their voices and threatening them." *Id.* As a result, Health Care Provider A "lost patients and suffered financial loss," including "dealing with attorneys, ongoing attorney's fees, insurance issues, [and] reciprocating patients whose data was breeched." *Id.* at 1-2.

One identity theft victim noted: "My HR dept at work thought I was trying to pull a fast one. I had to go to the police station and Social Security Office to file a fraud case against my unemployment. It was very stressful. It had happened at the worst time of my life, after a divorce, when I was trying to get on my own feet." Supp. VIS 4. That same victim noted: "Due to someone filing for unemployment under my SS#, I was not able to get benefits; they declined me (during COVID). I was furloughed over 3 months without pay. I couldn't pay my bill[.] I didn't have money for groceries. It was difficult time for me. I finally did get my benefits but it was several months later." *Id.*

Another victim similarly noted that her credit has been frozen, and described the psychological toll of being a victim of identity theft: "to this day, every step I take in my life I still am worried that this will happen again and will affect me and my family." Supp. VIS 4.

Finally, the impact on the Illinois Department of Employment Security is significant. As IDES summarized it in its Victim Impact Statement, which it

---

[3] The Victim Impact Statements of Health Care Provider A and IDES were attached to the Government's Version of the Offense. The supplemental Victim Impact Statements of individual victims (Supp. VIS) were submitted on August 23, 2023.

submitted in 2020, "the number of fraudulent unemployment claims filed has skyrocketed." Unfortunately, the COVID pandemic caused a wave of fraudulent claims for economic assistance. Even though defendant's conduct was over eight years ago, his sentence needs to deter those who would be tempted to defraud the government in the future.

### B. History and Characteristics of the Defendant

The defendant encountered obstacles as a child, including the unstable home described by his mother, and the absence of his biological father. But after he graduated high school in 2009, he chose not to pursue lawful employment. Instead, by 2013, he was engaging in a pattern of fraud that lasted years.

Although defendant ceased his fraudulent practices following his arrest, he does not have long track record of lawful employment, which means that there is still some risk of recidivism. Defendant was not fully forthcoming about his finances with Probation, which is concerning, but his attorney has indicated that he will complete that process.

Defendant has positive attributes that are mitigating. He helps care for his son and niece. He has been in a relationship with his son's mother since 2013, and has a good relationship with his own mother. Defendant also has completed high school and some college, and began working recently full time in a family business involving his uncle, father, and sister.

### C. Sentences of Comparable Defendants

Defendant's guidelines range of 51 to 63 months is also appropriate when considering other sentences in this case and the *Pitts* case, given the interest in

7

avoiding unwarranted sentencing disparities. The total loss amount that defendant is responsible for, based on the instant offense and relevant conduct, is $938,057. That is broken down to an actual loss to IDES of $491,154, an intended loss to IRS of $124,765, and an intended loss in the vehicle financing scheme of $322,138. Defendant has the second highest actual loss to IDES, after Brandon Pitts:

| **Defendant** | **Loss Amount** | **Sentence or Guideline Range** |
|---|---|---|
| Brandon Pitts | $788,951 (IDES) | 81-month sentence (including 2 years for aggravated identity theft)[4] |
| Anthony Henry | $491,154 (IDES) $124,765 (IRS) $322,138 (Vehicles) | 51 to 63 months guideline range |
| Jerome Pace | $120,181 (IDES) $249,737 (IRS) | 36-month sentence |
| Corey Logsdon | $141,556 (IDES) | 48-month sentence (including 2 years for aggravated identity theft) |

Because defendant had a significantly higher loss amount compared to his co-defendant Jerome Pace, and Corey Logsdon who engaged in similar conduct with IDES, defendant's guideline range appropriately advises for a sentence above sentences that Pace and Logsdon received.

---

[4] Brandon Pitts and Corey Logsdon were charged with aggravated identity theft based on their use of identities of Health Care Provider A patients. The *Pitts* case was charged after defendant's case, after Ashley Weatherby began cooperating regarding her role as the source of the identities.

8

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant within the Guidelines range, and order a three-year period of supervised release with the conditions recommended by United States Probation.

        Respectfully Submitted,

        MORRIS PASQUAL
        ACTING UNITED STATES ATTORNEY

By:    /s/ *Charles W. Mulaney*
        CHARLES W. MULANEY
        Assistant United States Attorney
        United States Attorney's Office
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 469-6042

Dated: August 31, 2023